IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 1:21-CR-0177 |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| REGINALD L. HOPKINS | : | Judge Jennifer P. Wilson |

**MEMORANDUM**

Defendant Reginald L. Hopkins ("Hopkins") is charged in a one-count superseding indictment with felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  (Doc. 227.)  Hopkins moves to dismiss the single-count superseding indictment based on the argument that Section 922(g)(1) violates the Second Amendment to the United States Constitution as applied to him.  (Doc. 203.)  For the reasons that follow, the court will deny the motion.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Hopkins was charged in a two-count indictment with felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) on June 23, 2021. (Doc. 1.)  On September 24, 2025, a superseding indictment was returned charging Hopkins with the felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).[1]  The Government alleges that law enforcement

---

[1] The motion to dismiss was filed prior to the superseding indictment and asked to dismiss Count 2 of the indictment.  Count 2 of the indictment alleges that on or about February 11, 2021, in

1

began investigating Hopkins in early 2021. (Doc. 212, pp. 1–2.)[2] Using a

confidential informant, law enforcement purchased $100 worth of crack cocaine

from Hopkins, but two other attempts to purchase drugs failed. (*Id.* at 2.) Law

enforcement used this evidence to obtain a search warrant for Hopkins' apartment,

where they seized three firearms, two of which were reported stolen. (*Id.* at 2.) On

February 19, 2021, the same day the search warrant was executed, Hopkins was

arrested on state charges. (*Id.*) Hopkins was later indicted by the U.S. Attorney's

Office on June 23, 2021. (*Id.*)

Hopkins is alleged to have violated Section 922(g)(1) because he possessed

the firearms, which were shipped and transported in interstate and foreign

commerce, after he was previously convicted of at least one crime punishable by

imprisonment for a term of more than one year. (Doc. 277.) The Government

asserts that Hopkins has numerous convictions that disqualify him from possession

of a firearm pursuant to Section 922(g)(1), including a 1996 Pennsylvania

---

Dauphin County, Pennsylvania, Defendant violated 18 U.S.C. § 922(g)(1). (Doc. 1, p. 2.) The same conduct is alleged in Count 1 of the superseding indictment. (Doc. 227, pp. 1–2.) At the request of Defendant, the court is construing Hopkins' motion to dismiss as seeking dismissal of Count 1 of the superseding indictment. (Doc. 237.)

[2] For ease of reference, the court uses the page numbers from the CM/ECF header.

conviction for unlawful delivery of cocaine, and a 2005 conviction from this court for possession with intent to distribute cocaine base.[3]  (Doc. 212, pp. 25–26.)

On July 17, 2025, Hopkins filed a motion to dismiss the indictment based on the argument that the application of Section 922(g)(1) to him violates the Second Amendment.  (Doc. 203.)  The motion was fully briefed as of August 26, 2025.  (*See* Docs. 204, 212, 219.)  This matter is currently listed for a date-certain trial on January 5, 2026.  (Doc. 192.)

## STANDARD OF REVIEW

Federal Rule of Criminal Procedure 12 allows parties to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."  FED. R. CRIM. P. 12(b)(1).  In his pretrial motion to dismiss, Hopkins asserts an as-applied challenge to the constitutionality of Section 922(g)(1).  (*See* Docs. 203, 212, 219.)  In order to resolve an as-applied challenge, the court determines whether a law with some permissible uses "is nonetheless unconstitutional as applied" to the movant's conduct.  *Spence v. Washington*, 418 U.S. 405, 414 (1974).

---

[3] The Government notes that Hopkins may have a third conviction for possession with intent to deliver marijuana from 2000, but the preliminary records gathered by the Government are unclear as to the exact conviction.  (Doc. 212, pp. 25–26 n.5.)

**DISCUSSION**

**A. The Parties' Arguments Regarding the Constitutionality of Section 922(g)(1) As Applied to Hopkins**

Hopkins argues that *New York State Rifle Association v. Bruen*, 597 U.S. 1 (2022), and *Range v. Attorney General*, 124 F.4th 218 (3d Cir. 2024) ("*Range II*"), makes Section 922(g)(1) unconstitutional as-applied to him. (Doc. 204, p. 3–5.) According to Hopkins, *Range II* affirmed that he has Second Amendment rights, he's one of the people, and that his conduct falls within the Second Amendment, as well as reaffirming the *Bruen* two-step framework. (*Id.*) Based on this, Hopkins argues that the Government cannot meet its burden of showing that permanent disarmament of Hopkins is consistent with the history and tradition of this Nation. (*Id.*) He further submits that his "very old narcotics convictions" do not make him sufficiently dangerous to prevent his possession of a firearm. (*Id.* at 4–5; Doc. 219, pp. 2–5.)

The Government essentially concedes that Hopkins is one of "the people" protected by the Second Amendment pursuant to *Range II*, but argues that Hopkins' motion should be denied because the prohibition on firearm possession in Section 922(g)(1) as applied to Hopkins is supported by relevant historical tradition. (*Id.* at 4–30.) In making this argument, the Government conducts a "dangerousness" analysis and submits that Hopkins' possession of a firearm poses a particular danger because of Hopkins' prior convictions. (*Id.* at 23–30.)

4

**B. The Text of the Second Amendment and Significant Rulings on the Second Amendment**

The text of the Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II.

### 1. Supreme Court Precedent from *Heller* to *Rahimi*

There was a sea change in the Supreme Court's analysis of the Second Amendment from the militia-based rationale articulated in *United States v. Miller*, 307 U.S. 174 (1939), to the pre-existing individual right explained in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. Chicago*, 561 U.S. 742 (2010). In those decisions, the Court "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *Bruen*, 597 U.S. at 8–9 (citing *Heller*, 554 U.S. at 570; *McDonald*, 561 U.S. at 742). And then, in 2022, the Court held in *Bruen* "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Id.*

Importantly, in *Bruen*, the Court established a two-step test to determine if a particular regulation violates the Second Amendment:

> In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, . . . the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm

> regulation is consistent with this Nation's historical tradition may a
> court conclude that the individual's conduct falls outside the Second
> Amendment's "unqualified command."

*Id.* at 24 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n.10 (1961)).

To measure consistency with historical firearm regulations, the modern regulation

must be "relevantly similar" to historical predecessors. *Id.* at 29. The Court

explained that the burden on the Government is to identify a "well-established and

representative historical *analogue*, not a historical *twin*. So even if a modern-day

regulation is not a dead ringer for historical precursors, it still may be analogous

enough to pass constitutional muster." *Id.* at 30. And then, in *United States v.*

*Rahimi*, 602 U.S. 680, 692 (2024), the Court clarified that, when conducting

*Bruen's* history-and-tradition inquiry, "the appropriate analysis . . . [is] whether the

challenged regulation is consistent with the principles that underpin our regulatory

tradition." The Court rejected the idea that the examination of historical analogues

signals "a law trapped in amber." *Id.* at 691.

### 2. Third Circuit Precedent Applying *Bruen* and *Rahimi*

The Third Circuit had occasion to apply both *Bruen* and *Rahimi* in the

appeal filed in the *Range* case. This appeal has traveled a long procedural road to

finality. In 2020, Bryan Range filed suit in the Eastern District of Pennsylvania,

seeking a declaration that Section 922(g)(1) violates the Second Amendment as

applied to him. Applying then-controlling Third Circuit precedent, *United States*

6

*v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010), *Binderup v. Attorney General*, 836

F.3d 336 (3d Cir. 2016) (en banc) (plurality), *Holloway v. Attorney General*, 948

F.3d 164 (3d Cir. 2020), and *Folajtar v. Attorney General*, 980 F.3d 897 (3d Cir.

2020), the district court granted summary judgment to the Government.  *Range v.*

*Lombardo*, 557 F. Supp. 3d 609, 611, 613–14 (E.D. Pa. 2021).  Range appealed.

While his appeal was pending, the Supreme Court decided *Bruen*.  A Circuit

panel affirmed the district court decision, applying *Bruen* and concluding that the

Government met its burden to show that Section 922(g)(1) reflects the Nation's

historical tradition of firearm regulation.  *Range v. Att'y Gen.*, 53 F.4th 262, 266

(3d Cir. 2022) (per curiam).  Range petitioned for rehearing en banc, and the

Circuit granted the petition and vacated the panel opinion.  *Range v. Att'y Gen.*, 56

F.4th 992 (3d Cir. 2022).  The en banc court reversed and remanded for the District

Court to enter judgment in favor of Range, finding that Range remained one of

"the people" protected by the Second Amendment and the Government did not

show that the Nation has a longstanding history and tradition of disarming people

like Range.  *Range v. Att'y Gen.*, 69 F.4th 96, 98 (3d Cir. 2023) (en banc) ("*Range*

*I*").

The Government filed a petition for writ of certiorari.  While that petition

was pending, the Supreme Court decided *Rahimi*.  The Court then vacated *Range I*

and remanded for further consideration. *Garland v. Range*, 144 S. Ct. 2706 (2024).

In the second en banc opinion following remand, the Third Circuit reached the same conclusions as in *Range I*. The Circuit concluded that Bryan Range remains one of "the people" for purposes of the Second Amendment notwithstanding his prior conviction. *Range II*, 124 F.4th at 226–28. The Circuit next concluded that Section 922(g)(1) regulates Second Amendment conduct and "'the Constitution presumptively protects that conduct.'" *Id.* at 228 (quoting *Bruen*, 597 U.S. at 17). The Circuit then examined whether the Government had shown that applying Section 922(g)(1) to Range would be "'consistent with the Nation's historical tradition of firearm regulation'" and concluded that it had not carried its burden. *Id.* (quoting *Bruen*, 597 U.S. at 24). The Third Circuit concluded its analysis as follows:

> Our decision today is a narrow one. Bryan Range challenged the constitutionality of 18 U.S.C. § 922(g)(1) only as applied to him given his violation of 62 Pa. Stat. Ann. § 481(a). Range remains one of "the people" protected by the Second Amendment, and his eligibility to lawfully purchase a rifle and a shotgun is protected by his right to keep and bear arms. More than two decades after he was convicted of food-stamp fraud and completed his sentence, he sought protection from prosecution under § 922(g)(1) for any future possession of a firearm. The record contains no evidence that Range poses a physical danger to others. Because the Government has not shown that our Republic has a longstanding history and tradition of depriving people like Range of their firearms, § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights.

*Id.* at 232.

Soon after *Range II* was decided, the Third Circuit addressed another civil case in which a plaintiff convicted of a felony offense brought suit seeking a declaration that application of Section 922(g)(1) to him would violate the Second Amendment. *Pitsilides v. Barr*, 128 F. 4th 203 (3d Cir. 2025). Upon examination of *Bruen*, *Rahimi*, and *Range II*, the Court explained the "upshot of these cases." *Id.* at 210–11. First, a court's "inquiry into *principles* that underlie our regulatory tradition does not reduce historical analogizing to an exercise in matching elements of modern laws to their historical predecessors." *Id.* at 210 (emphasis supplied). Second, "whatever other recourse may or may not be available, felons seeking to challenge the application of § 922(g)(1) at least may bring declaratory judgment actions" and relief may be granted on a record sufficient to enable "individualized fact-finding." *Id.* Finally, "while *Rahimi* and *Range II* did not purport to comprehensively define the metes and bounds of justifiable burdens on the Second Amendment right, they do, at a minimum, show that disarmament is justified as long as a felon continues to 'present a special danger of misus[ing firearms],' in other words, when he would likely 'pose[] a physical danger to others' if armed." *Id.* (quoting *Rahimi*, 602 U.S. at 698; *Range II*, 124 F.4th at 232). The *Pitsilides* decision makes clear that the "'Second Amendment's touchstone is dangerousness.'" *Id.* at 210–11 (quoting *Folajtar*, 980 F.3d at 924 (Bibas, J.,

dissenting); citing *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J.,

dissenting), *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024) (per

curiam), *United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024), and *United*

*States v. Jackson*, 110 F.4th 1120, 1128 (8th Cir. 2024)).

Ultimately, the Court remanded to the District Court for additional discovery

probative "to the prevailing Second Amendment analysis, including whether

Pitsilides poses a special danger of misusing firearms in a way that would endanger

others." *Pitsilides*, 128 F.4th at 213.  However, the Court instructed that:

> Courts adjudicating as-applied challenges to § 922(g)(1) must consider
> a convict's entire criminal history and post-conviction conduct
> indicative of dangerousness, along with his predicate offense and the
> conduct giving rise to that conviction, to evaluate whether he meets the
> threshold for continued disarmament.   As *Range II* illustrated,
> consideration of intervening conduct plays a crucial role in determining
> whether application of § 922(g)(1) is constitutional under the Second
> Amendment. *See* 124 F.4th at 232.  Indeed, such conduct may be highly
> probative of whether an individual likely poses an increased risk of
> "physical danger to others" if armed. *Id.*

*Id.* at 212.  That is because an individual may be disarmed "consistent with the

historical principle that legislatures may disarm a person who poses a danger to the

physical safety of others." *Id.* (citing *Rahimi*, 602 U.S. at 693; *Range II*, 124 F.4th

at 232; *Bullock*, 123 F.4th at 185; *Williams*, 113 F.4th at 662; and *Jackson*, 110

F.4th at 1128.)  Further, the Court observed that "both history and common sense

reflect that this 'dangerousness' includes not only direct involvement in physical

violence" but also conduct that is "'dangerous because [it] often lead[s] to

violence,'" such as burglary and drug dealing. *Id.* at 213 (quoting *Folajtar*, 980

F.3d at 922 (Bibas, J., dissenting); citing *Williams*, 113 F.4th at 659). This

assessment "necessarily requires individualized factual findings." *Id.*

The Third Circuit has issued two non-precedential decisions in criminal

cases following the decisions in *Range II* that provide additional guidance relevant

to this matter. In *United States v. White*, No. 23-3013, 2025 WL 384112, at *2 (3d

Cir. Feb. 4, 2025), *petition for cert. filed*, No. 24-7158 (May 8, 2025), the Court

rejected the Second Amendment challenge to Section 922(g)(1) because White's

"prior felony convictions for drug distribution, aggravated assault, and carrying a

firearm without a license demonstrate that he 'present[s] a special danger of

misus[ing firearms],' and would likely pose an increased risk of 'physical danger

to others' if armed." 2025 WL 384112, at *2 (quoting *Rahimi*, 602 U.S. at 698;

*Range II*, 124 F.4th at 232). Looking at White's entire criminal history, the Court

concluded that his convictions, considered collectively, show that White would

pose a danger to others if armed because his prior criminal activities could lead to

violent confrontation. *Id.* (citing *Williams*, 113 F.4th at 659 for the proposition that

legislatures may disarm those convicted of crimes like drug dealing because such

crimes pose a significant threat of danger, warranting disarmament).

In *United States v. Williams*, No. 23-2773, 2025 WL 1341877, at *2 (3d Cir.

May 8, 2025), the Court concluded that the District Court did not commit plain

error in rejecting Williams' Second Amendment challenge.  That is because

Williams has a lengthy criminal history that distinguished him from Bryan Range,

including two convictions for possession of cocaine with intent to distribute, one

conviction for possession of marijuana with intent to distribute, and one conviction

for child endangerment.  *Id.*  Given Williams' "dramatically different criminal

record," the Circuit's narrow holding in *Range II* did not compel the dismissal of

the Section 922(g)(1) conviction.  *Id.*

     Finally, there are two additional precedential decisions from the Third

Circuit that provide additional guidance with respect to the analysis of a Second

Amendment challenge to Section 922(g)(1).  In *United States v. Moore*, 111 F.4th

266, 273 (3d Cir. 2024), *petition for cert. filed*, No. 24-968 (Mar. 7, 2025), the

Third Circuit held that "[a] convict completing his sentence on [federal] supervised

release does not have a Second Amendment right to possess a firearm."  And, in

*United States v. Quailes*, 126 F.4th 215, 224 (3d Cir. 2025), *petition for cert. filed*,

No. 24-7033 (Apr. 18, 2025), the Third Circuit extended the holding in *Moore* to

individuals on state parole or probation.  However, this precedent is not controlling

in this case because the defendant was not on any form of supervision at the time

of the alleged offense conduct.

**C. Application of Relevant Precedent to Defendant's Second Amendment Challenge**

**1. *Bruen* Step One Analysis**

The first question is whether the text of the Second Amendment applies to Defendant and his proposed conduct. *See Bruen*, 597 U.S. at 31–33; *Range II*, 124 F.4th at 225; *Pitsilides*, 128 F.4th at 209. Here, the Government essentially concedes that Hopkins remains among "the people" despite his felony convictions. (Doc. 212, p. 4–32.) Rightfully so, based on the controlling precedent in *Range II* concluding that an individual who has a felony conviction remains among "the people." *See Range II*, 124 F.4th at 228.

In *Range II*, the Court characterized "the easy question" as "whether § 922(g)(1) regulates Second Amendment conduct." 124 F.4th at 228. The Court then stated: "It does." *Id.* In relevant part, the statute makes the possession of any firearm or ammunition unlawful for a person convicted of an offense punishable by imprisonment for a term exceeding one year. 18 U.S.C. § 922(1). The statute criminalizes the possession of any firearm or ammunition for any purpose (lawful or otherwise) by this class of persons. And it appears that the Circuit determined in *Range II* that this regulation of this specific conduct is clearly covered by the Second Amendment.

The court also notes that in the non-precedential *White* decision, where the criminal defendant argued that Section 922(g)(1) is unconstitutional as applied to

him, the Circuit did not address the first *Bruen* question at all, and only addressed

the second *Bruen* question.  2025 WL 384112 at \*2.  Since *Bruen* instructs that the

second step of conducting a historical tradition analysis is only necessary when the

person and his conduct are covered by the Second Amendment, 597 U.S. at 24, this

may suggest that the Circuit has determined that the first *Bruen* question did not

require further discussion in the context of a Second Amendment challenge to

Section 922(g)(1).  On the other hand, it may suggest that when a defendant's

challenge fails at the second *Bruen* step, as was the case in *White*, it is not

necessary to analyze the first *Bruen* step.  In any event, the Circuit clearly did not

analyze whether the defendant in *White* stated a purpose for his possession of a

firearm.

### 2.  *Bruen* Step Two Analysis

Having determined that the defendant and his conduct are covered by the

Second Amendment and presumptively protected, the court must next determine

"whether the Government can strip him of his right to keep and bear arms" by

analyzing whether application of Section 922(g)(1) to this defendant is "'consistent

with the Nation's historical tradition of firearm regulation.'"  *Range II*, 124 F.4th

at 228 (quoting *Bruen*, 597 U.S. at 24); *see also Pitsilides*, 128 F.4th at 209.

The court's analysis of the *Bruen* step two question is guided by the

controlling precedent in *Range II* and *Pitsilides*.  As detailed previously, the court

will assess this question according to "the prevailing Second Amendment analysis, including whether [the individual at issue] poses a special danger of misusing firearms in a way that would endanger others." *Pitsilides*, 128 F.4th at 213. The court will consider the defendant's "entire criminal history and post-conviction conduct indicative of dangerousness, along with his predicate offense and the conduct giving rise to that conviction, to evaluate whether he meets the threshold for continued disarmament." *Pitsilides*, 128 F. 4th at 212. That is because an individual may be disarmed "consistent with the historical principle that legislatures may disarm a person who poses a danger to the physical safety of others." *Id.*; *see also Range II*, 124 F.4th at 230 (citing *Rahimi* in support of the proposition that disarming (at least temporarily) physically dangerous people based on a finding that such person poses a safety threat is consistent with the historical tradition of disarming people who pose a clear threat of physical violence to another); *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024); *United States v. Williams*, 113 F.4th 637, 649–663 (6th Cir. 2024).

In conducting this analysis, the court is mindful of the narrowness of the *Range II* holding. The Circuit found only that our Nation's history and tradition do not support permanent disarmament of Bryan Range who only has a two-decades old conviction for food-stamp fraud and there is no evidence of ongoing recidivism or threat of physical danger to others. *See Range II*, 124 F.4th at 232. In assessing

whether the criminal record and available background information about the

defendant in this case lead to the conclusion that the defendant is, in fact,

sufficiently dangerous so that the application of Section 922(g)(1) to him is

consistent with the Second Amendment, the court will view Bryan Range as one

data point on the dangerousness spectrum, specifically, on the far end of non-

dangerousness.

The Government contends that applying Section 922(g)(1) to Hopkins is

constitutional because his "drug-trafficking convictions are serious and indicate

that his firearm possession would pose a danger to himself or others." (Doc. 212,

p. 25.) The Government relies on Hopkins' pretrial services report, which details

his two prior convictions for felony drug trafficking. (*Id.* at 25–26.) The

Government submits that these prior convictions alone provide a basis to reject

Hopkins' constitutional challenged based on the demonstrated dangerousness of

drug trafficking crimes in combination with firearms. (*Id.* at 26–28.)

Hopkins maintains that permanent disarmament through application of

Section 922(g)(1) as applied to him is unconstitutional because his prior

convictions are "very old," and the Government has not met its burden of showing

the Nation's historical tradition of permanently disarming a person with only non-

violent prior felony convictions. (Doc. 204, pp. 4–5.)

Having considered both parties' arguments, the court concludes that

Hopkins' two prior convictions for felony drug trafficking demonstrate that

Hopkins presents a danger of misusing firearms and would likely pose an increased

risk of physical danger to others if permitted to be armed. *See White*, 2025 WL

384112 at *2 (holding that defendant's prior criminal convictions for possession

with intent to distribute controlled substances, aggravated assault, and carrying an

unlicensed firearm "shows that he would pose such a danger to others if armed

because those activities could lead to violent confrontation"); *Williams*, 113 F.4th

at 663 (holding that a person convicted of a crime is dangerous and can be

disarmed if he has committed, among others, "a crime that inherently poses a

significant threat of danger, including (but not limited to) drug trafficking and

burglary"); *Williams*, 2025 WL 1341877 at *2 (holding that prior convictions for

possession with intent to distribute cocaine and marijuana and child endangerment

constitute a "dramatically different criminal record" than Bryan Range for

purposes of Second Amendment analysis); *Mollett*, 2025 WL 564885 at *7

(holding that three prior convictions for drug trafficking less than two years prior

to the Section 922(g)(1) offense support the conclusion that defendant presented a

special danger of misusing firearms and was subject to disarmament).

Based on this comprehensive review of Hopkins' criminal record, it is clear

that Hopkins presents a far greater risk of dangerousness than Bryan Range if

permitted to be armed.  Thus, based on the above analysis, the court concludes that

Section 922(g)(1) is not unconstitutional as applied to Hopkins.

<div align="center">

**CONCLUSION**

</div>

For the foregoing reasons, Hopkins' motion to dismiss the indictment, Doc.

203, will be denied.  An implementing order will follow.

<div style="margin-left: 40%;">

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

</div>

Dated: November 7, 2025